**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CYNTHIA EARLY, on behalf of herself And all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 4:20-CV-1678 RLW |
| HENRY THAYER COMPANY, INC., | ) ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Cynthia Early brings this suit against Henry Thayer Company, Inc. ("Thayer") for violations

of the Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.025, et seq. ("MMPA"), breach

of express warranty, and for unjust enrichment.   Plaintiff Early brings suit on behalf of herself and

those similarly situated.   This matter is before the Court on Thayer's motion to dismiss for failure

to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Thayer also

moves that the Court transfer the above-captioned case to the United States District Court for the

Western District of Pennsylvania under the first-filed doctrine or, in the alternative, that the Court

stay this matter until the action in Pennsylvania has concluded.   Plaintiff opposes both motions,

which are fully briefed and ripe for review.[1]   For the reasons that follow, the Court denies Thayer's

motion to transfer or stay, and grants, in part, its motion to dismiss for failure to state a claim.

---

[1] Plaintiff filed a motion for leave to file a surreply in opposition to Thayer's motion to dismiss. Thayer opposes the motion. First, although Plaintiff seeks leave to file a surreply, a memorandum filed following a reply is properly designated a surresponse, which itself may be followed by a surreply. As for the merits of the motion, additional briefing beyond the standard motion, response, and reply is not routinely granted.   Plaintiff must explain in her motion why, in this particular instance, additional briefing is required.   Plaintiff asserts that Thayer has raised several new arguments in its reply that need to be addressed. The Court does not agree. Having reviewed Plaintiff's motion and her proposed brief, the Court finds additional briefing is not

## *I. Background*

In this putative class action, Plaintiff Cynthia Early alleges Thayer has misled and continues to mislead consumers into believing its products are natural and do not contain synthetic ingredients. Plaintiff Early seeks to represent consumers who were allegedly misled into purchasing Thayer's products at a premium price under the false representation that they were natural, when in fact they contained synthetic ingredients.

Thayer manufactures a variety of personal care products under the name THAYERS® Natural Remedies, which are sold in drug stores, grocery stores, and other retail stores nationwide. ECF No. 1 at 18, ¶ 59. This matter is before the Court on the basis of diversity jurisdiction. Thayer is a Delaware corporation with its principal place of business in Connecticut, and Plaintiff Cynthia Early is a citizen of Missouri residing in St. Louis County. Plaintiff alleges she has purchased Thayer's products from physical retail stores in the last five years. Specifically, she alleges she purchased THAYERS® Natural Remedies Rose Petal Facial Toner at a CVS store in Missouri.

Plaintiff alleges that Thayer manufactures, advertises, and sells its THAYERS® Natural Remedies products, representing that the products are "Natural," and "Natural Remedies." Id. at 1,

---

required to decide the motion to dismiss. Nor does the Court need an excerpt from an elementary school textbook, which Plaintiff attached as an exhibit to her proposed brief, to understand ratios and percentages. Plaintiff's motion to file a surreply, which the Court construes as a motion to file a surresponse, is denied.

Plaintiff also moves to file an Amended Memorandum in Opposition to Thayer's Motion to Transfer. In her motion, Plaintiff states that the wrong memorandum in opposition was filed in response to Thayer's motion. Thayer does not oppose the motion, and it will be granted. The Court will not direct the Clerk to docket the proposed Amended Memorandum attached to Plaintiff's motion, however, because it is labeled as an exhibit. Documents that require leave of Court for filing should not include an exhibit designation unless the document will be an exhibit when filed.

¶ 1.   According to Plaintiff, the front label on each of Thayer's products prominently reinforces the claims that Thayer's products are natural. Id. 2 & 3 at ¶¶ 3 & 9.   Plaintiff also alleges Thayer represents that its products are "natural" on its website and social media platforms.   Plaintiff contends Thayer's claims that its products are "natural" are false, misleading, and designed to deceive consumers into paying a price premium and to choose Thayer's products over a competitor's product. Id. at 4 ¶¶ 14-15. Plaintiff attached to her Complaint a list of 31 Thayer's products, which she contends fail to conform to Thayer's representations that the products are "natural," because the products contain several synthetic, unnatural ingredients and preservatives, including phenoxyethanol, sodium benzoate, potassium sorbate, polysorbate-20, and ascorbic acid.   Id. at Ex. A.

In her Complaint, Plaintiff brings the following six claims against Thayer: (1) violation of the MMPA for selling products that are deceptively represented as "natural" (Count I); (2) violation of the MMPA for misrepresenting that its products were "natural" (Count II); (3) violation of the MMPA for concealing and omitting the material facts that its products are not "natural" (Count III); (4) violation of the MMPA for making half-truths about the ingredients in its products (Count IV); (5) breach of express warranty (Count V); and (6) unjust enrichment (Count VI).

Plaintiff seeks to bring claims on behalf of herself and two classes of consumers.   She seeks an order under Rule 23 of the Federal Rules Civil Procedure certifying a state-wide class and a national class.   She also asks the Court to enter an order declaring Thayer's conduct violates the MMPA and other Missouri state laws. Plaintiff seeks compensatory and punitive damages, as well as injunctive relief and attorneys' fees.

Before this suit was filed, a plaintiff in Pennsylvania filed suit in October 2019 against Thayer alleging a number of its products were improperly labeled and marketed as "natural" because they contained synthetic ingredients.   See Lisowski v. Henry Thayer Co., No. 2:19-CV-1339 MJH (W.D. Pa., filed Oct. 19, 2019).   The plaintiff in the Lisowski case, who is represented by the same counsel as the plaintiff here, alleged violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") on behalf of a Pennsylvania class, and breach of express warranty and unjust enrichment on behalf of a nationwide class.   Four months after that suit was filed, the complaint in Lisowski was amended to add a plaintiff from Maryland and claims under Maryland's Consumer Protection Act.   Thayer moved to dismiss the Lisowski complaint based on a number of the same arguments the company has made in this case.   Thayer also moved to dismiss the Maryland plaintiff, arguing there was no personal jurisdiction over that plaintiff in Pennsylvania.

On November 17, 2020, the Honorable Marilyn J. Horan granted in part and denied in part Thayer's motion to dismiss. Lisowski v. Henry Thayer Co., Inc., 501 F. Supp. 3d 316 (W.D. Pa. 2020), on reconsideration in part, No. CV 19-1339, 2021 WL 1185924 (W.D. Pa. Mar. 30, 2021). Judge Horan dismissed the Maryland plaintiff's claims for lack of personal jurisdiction.   Id. at 326. The court agreed with Thayer that there was no basis to assert general jurisdiction over Thayer in Pennsylvania. Id.   With regard to specific jurisdiction, the Maryland plaintiff alleged he purchased the products in Maryland and his alleged injuries occurred in Maryland, therefore, according to the district court, there was no specific personal jurisdiction over the Maryland plaintiff's claims in Pennsylvania.   Id.   All of the Maryland plaintiff's claims were dismissed for lack of personal jurisdiction.   Id.

4

As for the Pennsylvania plaintiff's claims, the court in <u>Lisowski</u> dismissed the breach of warranty claims, UTPCPL claims, and unjust enrichment claims based on the use of the word "natural" on Thayer's product labels and website. <u>Id.</u> at 339.   Judge Horan denied Thayer's motion to dismiss the UTPCPL and unjust enrichment claims with respect to two dry mouth products containing the label "preservative-free," leaving only two Pennsylvania state law claims and two products in the case.[2]  <u>Id.</u>

In the case at bar, Thayer moves the Court to transfer this cause of action to the United States District Court for the Western District of Pennsylvania under the first-filed rule.   In the alternative, Thayer asks the Court to stay these proceedings pending resolution of the Pennsylvania case.   Thayer also moves to dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6) on a number of grounds.   Thayer argues some of Plaintiff's claims are preempted by the Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 <u>et</u> <u>seq.</u> ("FDCA").   Thayer also argues that its trade name, "THAYERS® Natural Remedies," cannot create an express warranty, and that Plaintiff improperly takes the term "natural" out of context.   Thayer further argues Plaintiff's MMPA claims fail to state a claim for relief in that she has failed to allege any unfair practices or ascertainable loss, and she cannot sue over products she did not purchase or online statements she did not see.   Thayer argues Plaintiff's claim for injunctive relief under the MMPA fails because she has not shown redressability. And finally, Thayer argues Plaintiff's unjust enrichment claim is not an independent cause of action and must be dismissed.

---

[2]The Pennsylvania plaintiff filed a motion to reconsider the court's dismissal order.   The motion was granted with respect to one issue: "the viability of potential claims of the putative class regarding products [the named plaintiff] did not personally purchase." <u>Lisowski v. Henry Thayer Co., Inc.</u>, No. CV 19-1339, 2021 WL 1185924, at *4 (W.D. Pa. Mar. 30, 2021).   In all other respects, the motion for reconsideration was denied.   <u>Id.</u>

## II. Motion to Transfer or Stay

Thayer moves to transfer this case to the Western District of Pennsylvania under the first-filed rule.   In the alternative, Thayer requests that the Court stay this matter pending resolution of the Pennsylvania case.   As the Eighth Circuit has explained, "the doctrine of federal comity permits a court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." Orthmann v. Apple River Campground, Inc., 765 F.2d 119, 121 (8th Cir. 1985) (citing Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 94–5 (9th Cir. 1982)).   Known as the first-to-file rule, the Eighth Circuit held "where [there are] two courts [with] concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case."   Id. (citing Hospah Coal Co. v. Chaco Energy Co., 673 F.2d 1161, 1163 (10th Cir. 1982)). "The purpose of this rule is to promote efficient use of judicial resources."   Id.   Courts enjoy wide discretion in applying the first-filed doctrine, and the rule "is not intended to be rigid, mechanical, or inflexible, but should be applied in a manner serving sound judicial administration."   Id. at 121; see also Nw. Airlines, Inc. v. Am. Airlines, Inc., 989 F.2d 1002, 1004 (8th Cir. 1993) (first-to-file rule is "to be applied in a manner best serving the interests of justice").

In general, courts look at three factors when deciding to apply the first-to-file rule: (1) timing of events; (2) the similarity of the parties involved, and (3) the similarity of the claim or issues at stake.   Baatz v. Columbia Gas Transmission, LLC, 814 F.3d 785, 789 (6th Cir. 2016).   Courts have held that the rule can be applied even where the parties are not completely identical, which is often the case in putative class actions.   Id. at 790–91 (collecting citations for the proposition that parties can be treated as similar or identical if there is substantial overlap between the putative class and the later filing litigants).

In this case, Plaintiff filed suit in the Eastern District of Missouri on November 27, 2020. The <u>Lisowski</u> case was filed in the Western District of Pennsylvania in October 2019.   Therefore, the <u>Lisowski</u> case is the first-filed case.   Thayer is the named defendant in both suits, but the named plaintiffs are not the same.   The remaining plaintiffs in the <u>Lisowski</u> case are consumers from Pennsylvania. The consumer from Maryland was dismissed from the <u>Lisowski</u> case for lack of personal jurisdiction.   Here, the plaintiff is a consumer from Missouri.   There is, however, some overlap in the proposed classes.   In <u>Lisowski</u>, the Pennsylvania plaintiffs propose to represent a national class of all persons who purchased Thayer's products within the United States and within the applicable statute of limitations period, and a subclass of Pennsylvania consumers who purchased Thayer's products within the Commonwealth of Pennsylvania within the applicable statute of limitations.   Here, Plaintiff seeks to represent a national class, as well as a subclass of Missouri consumers who purchased Thayer's products within the State of Missouri within the applicable statute of limitations.

The claims asserted in the two cases are not the same, but they are parallel.   Both actions assert claims of unjust enrichment and breach of warranty and bring claims under their respective states' consumer protection statutes.   The claims are based on the same facts and legal theory – that Thayer misled its consumers into purchasing personal products based on mislabeling its products as "natural" when in fact they contain synthetic ingredients. But the consumer protection statutes are not the same, and the applicable case law addressing the statutes and common law claims is not the same.

In support of its argument that this case should be transferred to the Western District of Pennsylvania, Thayer cites to an unpublished case, <u>Young v. L'Oréal USA, Inc.</u>, 20-CV-944-JSW

(N.D. Cal. Jan. 15, 2021), which it attached to its memorandum in support. (ECF No. 20, Ex. 1). In <u>Young</u>, a United States district court in California transferred a consumer putative class action to a United States district court in New York, even though the plaintiffs in the two cases, like here, brought claims under their respective state laws, and the case in New York had been dismissed under Rule 12(b)(6).  <u>Id.</u> at 11.  The court in California found the fact that the plaintiffs were asserting claims under California law, while the plaintiffs in the transferee court were asserting claims under New York law, did not preclude transfer under the first-filed doctrine because the legal issues were substantially similar. <u>Id.</u> at 7 (citing <u>Koehler v. Pepperidge Farm, Inc.</u>, No. 13-CV-02644-YGR, 2013 WL 4806895, at *4–5 (N.D. Cal. Sept. 9, 2013); <u>Schwartz v. Frito-Lay N. Am.</u>, No. C-12-02740 EDL, 2012 WL 8147135, at *3 (N.D. Cal. Sept. 12, 2012)).   The California district court also found that principles of economy, consistency, and comity supported applying the first-filed rule, despite the fact the case in New York had been dismissed. <u>Id.</u>

Setting aside that <u>Young</u> is an unpublished case which is not even found on Westlaw, the Court does not find the <u>Young</u> decision supports transfer because the case is factually distinguishable from the case at bar.  Thayer seeks to have this case transferred to the Western District of Pennsylvania where <u>Lisowski</u> is pending.   But in the court in <u>Lisowski</u> declined to find there was personal jurisdiction over an out-of-state plaintiff.   When an out-of-state plaintiff from Maryland attempted to bring his claims against Thayer in Pennsylvania, Thayer moved to dismiss for lack of personal jurisdiction.   Thayer argued that the court in Pennsylvania lacked personal jurisdiction to hear the dispute because the Maryland plaintiff purchased the products in Maryland and his alleged injuries occurred in Maryland.   The <u>Lisowski </u>court agreed with Thayer and dismissed the Maryland plaintiff's claims. <u>Lisowski</u>, 501 F. Supp. 3d at 326.   In the <u>Young</u>

8

decision, there is no indication that the defendant had objected to personal jurisdiction over claims of an out-of-state plaintiff in the transferee court.

The Court finds the Eighth Circuit's decision in Orthmann v. Apple River Campground, Inc., to be more instructive as to the issue at hand. Orthmann, 765 F.2d 119. While the Orthmann case is often cited for the first-filed standard in the Eighth Circuit, the Eighth Circuit declined to apply the doctrine in that case. In Orthmann, the plaintiff suffered serious injuries while tubing on a river in Wisconsin.   As the plaintiff had recently moved to Minnesota, he first filed a tort action against the innertube rental company in the United States District Court for the District of Minnesota. Orthmann, 765 F.2d at 120.   A few months later, he filed an identical action in the United States District Court for the Western District of Wisconsin. The plaintiff then requested that the Wisconsin court stay its proceedings pending the outcome of the Minnesota action. The Wisconsin court did not stay its proceeding and granted the defendant's motion to dismiss for failure to state a claim.   The dismissal was later overturned in part by the Seventh Circuit Court of Appeals and remanded back to the district court.   In the meantime, the court in Minnesota dismissed its case for lack of personal jurisdiction, which was appealed to the Eighth Circuit.   Id.

On appeal, the Eighth Circuit did not apply the first-filed doctrine, but rather found the federal comity doctrine was best served by dismissing the first-filed Minnesota case in favor of the Wisconsin case, which was filed months later. Id. at 121.   In reaching its decision, the Court of Appeals emphasized that "none of the parties question whether the Wisconsin court has personal jurisdiction, [but] the parties vigorously dispute whether there is personal jurisdiction over the defendants in Minnesota."   Id.

9

Here, there is no question as to whether personal jurisdiction exists in this Court over a Missouri plaintiff's claims based on products she purchased in Missouri.   But transferring the case to the Western District of Pennsylvania may well leave Plaintiff without a forum, as Thayer has already objected on personal jurisdictional grounds to the claims of an out-of-state plaintiff in Pennsylvania.   Thayer should have anticipated a scenario where it would be called upon to defend similar suits in different courts.   When Thayer opposed personal jurisdiction of an out-of-state plaintiff and moved to dismiss the Maryland plaintiff's claims in Pennsylvania, Thayer argued that the Maryland plaintiff could pursue his own claims in another court of competent jurisdiction. Lisowski v. Henry Thayer Co., No. CV-19-1339, ECF No. 9 at 6-7.   There does not appear to be any doubt this Court has personal jurisdiction over Plaintiff's claims against Thayer.

In addition to the risk of leaving Plaintiff without a forum, there is little to be gained from transferring this case to Pennsylvania or staying the case until the Pennsylvania suit is resolved. While the claims in this case are similar to the claims in the Lisowski case, they are not identical. The claims in this suit are based in Missouri law, while the claims in the Lisowski case are based on Pennsylvania law.   If this Court were to transfer this case to Pennsylvania, the prior rulings in Lisowski would not be controlling.   The district court in Pennsylvania would be tasked with addressing the claims in this case under Missouri law. This Court is familiar with Missouri law, and there would be no savings of judicial resources by transferring the case to Pennsylvania.

The Court finds that the interests of justice and conservation of judicial resources are best served by retaining jurisdiction in this case. The Court declines to transfer or stay this action on the basis of the first-filed doctrine.

10

### III. Motion to Dismiss

Thayer moves to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), all of the claims against it based on a number of grounds. Thayer argues: (1) Plaintiff's attempts to impose disclosure requirements on Thayer's labels are preempted by FDCA; (2) Thayer's trade name cannot create an express warranty; (3) Plaintiff improperly takes the term "natural" out of context; (4) Plaintiff has failed to allege any unfair practices under the MMPA; (5) Plaintiff cannot sue over products she never purchased or online statements she never saw; (6) Plaintiff fails to allege ascertainable loss; (7) Plaintiff lacks standing to seek injunctive relief under the MMPA; and (8) Plaintiff's unjust enrichment claim is not an independent cause of action.

### A.    Legal Standard

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Blomker v. Jewell, 831 F.3d 1051, 1055 (8th Cir. 2016) (quotation omitted). The facts alleged must "raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.   A complaint must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" to state a plausible claim for relief.   Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," Twombly, 550

U.S. at 556, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief.  Id. at 555–56; Fed. R. Civ. P. 8(a)(2). The principle that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions, however. Iqbal, 556 U.S. at 678 (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Although legal conclusions can provide the framework for a complaint, they must be supported by factual allegations. Id.

A claim sounding in fraud is subject to a heightened pleading standard, and the plaintiff "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy this requirement, the pleader must generally set forth the "who, what, when, where, and how of the misconduct charged." BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007) (internal quotation marks and quoted cases omitted). "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Schaller Tel. Co. v. Golden Sky Sys., Inc., 298 F.3d 736, 746 (8th Cir. 2002) (quoting Com. Prop. Invs., Inc. v. Quality Inns Int'l, Inc., 61 F.3d 639, 644 (8th Cir. 1995)).

**B.   Background and Discussion**

In her Complaint, Plaintiff Early alleges she has purchased a number of Thayer's products but specifies only one that she purchased.   Plaintiff Early alleges that in October 2020, she purchased Thayers® Natural Remedies Rose Petal Facial Toner from a physical retail store in Missouri and paid $7.19.   The following is a depiction of the label that was wrapped around the bottle she purchased:



(ECF No. 9, Ex. 1)[3]

"SINCE 1847 THAYERS® NATURAL REMEDIES" appears on the top of the front of the label followed by the product name "FACIAL TONER."   Below the product name is the descriptive phrase "WITCH HAZEL," with the phrase "ALOE VERA FORMULA" directly below. Appearing at the bottom of the label is the descriptive term "ROSE PETAL," with the phrase "ALCOHOL-FREE," just below it.

The top left side of the label, in smaller font size, is "SINCE 1847 THAYERS® NATURAL REMEDIES."   It also provides the product name (FACIAL TONER WITCH HAZEL ALOE

---

[3]In the Complaint, Plaintiff included a photograph of the front of the Thayer's product she purchased. ECF No. 1 at 19. The label wraps around a bottle, and the photo in the Complaint did not show the back of the label. Thayer submitted a copy of the full label as an attachment to its Memorandum in Support of its Motion to Dismiss. ECF No. 9, Ex. 1. Plaintiff did not object to the authenticity of the exhibit and referred to it in her Memorandum in Opposition to Defendant's Motion to Dismiss.

VERA FORMULA). The remainder of the left side of the label includes contact information and a

barcode, and it reads as follows:

> Directions: Apply with a cotton ball or soft pad to cleanse, soften, refresh and
> moisturize skin.   Use anytime throughout the day as a softening refresher.

> Ingredients: Purified Water, Glycerin, Certified Organic Witch Hazel Extract Blend
> (Hamamelis Virginiana Extract (Witch Hazel*), Aloe Barbadensis Leaf Juice (Filet
> of Aloe Vera*)), Rosa Centifolia (Rose) Flower Water, Natural Fragrance, Citrus
> Grandis (Grapefruit) Seed Extract, Phenoxyethanol, Caprylyl Glycol,
> Ethylhexylglycerin, Citric Acid, Potassium Hydroxide
> *Denotes Certified Organic Ingredients

> The carefully selected, naturally sourced ingredients in this product may have
> undergone limited processing. Variations in color, clarity, etc. can be expected from
> lot to lot due to our use of naturally occurring ingredients.

At the top of the right side of the label is "SINCE 1847 THAYERS® NATURAL

REMEDIES," as it appears on the front of the label, except in smaller size, along with the phrase,

"Rose Petal" appearing to its right. The remainder of the right side of the label reads as follows:

> Flower Power.   Make your skin bloom with THAYERS® Rose Petal Facial Toner.
> This gentle toner is derived from a time-honored formula, developed by Thayers to
> cleanse, tone, moisturize, and balance the pH level of skin. In addition to containing
> pore-cleansing Rose Water and certified organic Aloe Vera, this unique, proprietary
> blend also contains certified organic, non-distilled Witch Hazel that's grown
> exclusively for Thayers on a family farm in Fairfield County, Connecticut. By
> avoiding distillation of our Witch Hazel, we're able to preserve the naturally-
> occurring, beneficial tannins, which are known to offer antioxidant and
> antibacterial benefits, and bring about a natural glow. Thayers elixirs have been a
> fixture in medicine cabinets for generations – once you use them, you'll know why.

Plaintiff alleges that prior to purchasing the product, she saw and read the front of the label

and relied on the representation and warranty that the product would be a "natural remedy" and

"natural," which she understood to mean that the product only contained natural ingredients and

did not contain synthetic chemicals.   Plaintiff claims this label, as well as other labels found on

14

Thayer's products, are false, misleading and deceptive, because Thayer's products contain Phenoxyethanol, Potassium Sorbate, Polysorbate 20, Sodium Benzoate, Caprylyl Glycol, Propanediol, Maltodextrin, Fragrance, Citric Acid, and other synthetic ingredients that are not natural.

> Plaintiff alleges a substance is natural, as opposed to synthetic, if:
>
> (a) it is manufactured, produced, or extracted from a natural source (i.e. naturally occurring mineral or biological matter); (b) it has not undergone a chemical change (i.e. a process whereby a substance is transformed into one or more other distinct substances) so that it is chemically or structurally different than how it naturally occurs in the source material; or (c) the chemical change was created by a naturally occurring biological process such as composting, fermentation, or enzymatic digestion or by heating or burning biological matter.

ECF No. 1 at 11, ¶ 28.

Plaintiff alleges that she purchased Thayer's products at a premium price, and she would not have purchased it at all had she known that the labeling and marketing was false, misleading, and deceptive.   According to Plaintiff, "[t]he phrase 'Natural Remedies' is a representation to a reasonable consumer that THAYERS® brand Products contain only natural ingredients."   ECF No. 1 at 20, ¶66.

In the Complaint are a number of allegations regarding representations on Thayer's website and social media platforms, such as Twitter.   ECF No. 1 at 2-4, 10-12, 18.   There are also allegations that Thayer failed to properly disclose all of the synthetic ingredients in its products. More specifically, the Complaint alleges Phenoxyethanol was omitted from the ingredients list on Thayers® Unscented Witch Hazel Facial Mist for "many years."   ECF No. 1 at 20, ¶67.   There are no allegations, however, that Plaintiff purchased Thayer products with labels that omitted synthetic ingredients in the ingredients statement.   Finally, there are allegations in the Complaint

that Thayer products contain ingredients that are unsafe for children and pregnant women.   ECF No. 1 at 9, ¶¶  22-23.   Plaintiff, however, does not allege that she purchased Thayer's products to use on children or while she was pregnant or that she was physically harmed by the Thayer products she purchased.

### 1.      Preemption under the Food, Drug, and Cosmetic Act

Thayer first argues that some of Plaintiff's labeling claims should be dismissed because they are preempted by the FDCA.   Thayer moves to dismiss claims based on Plaintiff's allegations that: (1) the ingredient statement on the "back" of the label is in "hard-to-read print," (2) the label fails to disclose whether individual ingredients are synthetic, and (3) the label fails to affirmatively disclose that the product(s) generally contain alleged "synthetic, unnatural, and dangerous" ingredients, "artificial" ingredients, or are not 100% natural. ECF No. 1 at ¶¶ 4, 32, 34, 118, 126, 135, 143.

Plaintiff responds that Thayer had misconstrued her claims.   She states that her claims concern the misbranding of the products as "natural."   Plaintiff states that like the plaintiffs in Bell v. Publix Super Markets, Inc., "she is not seeking to add labeling requirements. She is only seeking 'to stop defendants from voluntarily adding deceptive language to the federally permitted labels.'" ECF No. 16 at 16 (quoting Bell v. Publix Super Markets, Inc., 982 F.3d 468, 484 (7th Cir. 2020)).

Federal law may preempt state law either expressly or impliedly. "Express preemption exists when a federal law explicitly prohibits state regulation in a particular field. Implied preemption arises when a federal law completely occupies the field of regulation so that by implication there is no room for state regulation and the coexistence of federal and state regulation is not possible."   Missouri Bd. of Examiners for Hearing Instrument Specialists v. Hearing Help

16

Exp., Inc., 447 F.3d 1033, 1035 (8th Cir. 2006) (citing Chapman v. Lab One, 390 F.3d 620, 624

(8th Cir. 2004).   Thayer does not argue that the FDCA occupies the field in this area, but rather

that there is preemption language in the statute, which preempts some of Plaintiff's claims.

      In determining whether the FDCA preempts Missouri law, the Court must look to the

specific preemption language in the statute.   The FDCA states in pertinent part:

> [N]o State or political subdivision of a State may establish or continue in effect
> any requirement for labeling or packaging of a cosmetic that is different from or in
> addition to, or that is otherwise not identical with, a requirement specifically
> applicable to a particular cosmetic or class of cosmetics under this chapter.

21 U.S.C. § 379s.   The Eighth Circuit instructs that "[p]reemptive language in a statute is to be

read narrowly," and "without clear congressional intent there is a general presumption against

finding implied preemption."   Missouri Bd. of Examiners for Hearing Instrument Specialists, 447

F.3d at 1035   (citing Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 518–19 (1992); Medtronic, Inc.

v. Lohr, 518 U.S. 470, 485 (1996)).

      Thayer argues that any allegations as to the font size of the ingredients list or allegations

that the products must identify which ingredients are "synthetic" and which are "natural" contradict

the FDCA's labeling requirements. See 21 C.F.R. § 701.3 (setting font size minimum) and

§ 701.3(c) (prohibiting the use of descriptive terms in ingredient statements).   Thayer also argues

that any claims that Thayer must include disclaimers on its products, such as that the products

contain synthetic, artificial, unnatural, or dangerous ingredients, are also preempted because the

FDCA has not imposed such disclosure requirements.

      To the extent Plaintiff's Complaint alleges the font size is too small on Thayer's label, that

Thayer must include disclaimers on its products' labels, or that the labels on its products must

identify which ingredients are "synthetic" and which are "natural," these claims are preempted by

the FDCA because these requirements would be "different from or in addition to" what is required under the FDCA. 21 U.S.C. § 379s.   Plaintiff's claims about alleged deceptions and misrepresentations, however, are not preempted.   Under the FDCA there is a general prohibition against misbranding, and it prohibits false or misleading labeling.   21 U.S.C. § 362(a) (cosmetic deemed misbranded if "labeling is false or misleading in any particular"); cf. 21 C.F.R. § 701.1(b) (labeling "may be misleading" where it designates the cosmetic "by a name which includes or suggests the name of one or more but not all ... ingredients").   The Court finds, therefore, that Plaintiff's claims regarding the deceptive or misleading use of the term "natural" and "natural remedies" on the labels of Thayer's products are not preempted by the FDCA, and the Court declines to dismiss claims on this basis.

### 2.      Breach of Express Warranty

Thayer argues the Court must dismiss plaintiff's claims for breach of express warranty because Thayer's trade name and contextual references to "natural" on its label, website, and social media platforms do not create express warranties that the products are all natural.   In support of its arguments, Thayer relies primarily on the Lisowski decision, 501 F. Supp. 3d at 323.

An express warranty is created when "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Wilson v. Marquette Elecs., Inc., 630 F.2d 575, 579 (8th Cir. 1980); Hays v. Nissan N. Am. Inc., 297 F. Supp. 3d 958, 961 (W.D. Mo. 2017).

#### a.      Thayer's trade name

Thayer argues its trade name, "THAYERS® Natural Remedies," cannot be construed as an express warranty about of the composition of its products.   Thayer contends "the 'uniform' body

of cases across the country holds that trade names do not create an express warranty about the product's quality or characteristics; they only 'communicate[] that any product bearing said trademark is authentic.'" ECF No. 9 at 10 (quoting Lisowski, 501 F. Supp. 3d at 329). Thayer asserts "[e]ach case considering the issue of whether a trade name creates a warranty has rejected Plaintiff's theory." Id.

First, there appear to be factual issues regarding Thayer's trade name. Plaintiff points out in her opposition memorandum that on Thayer's product labels, the symbol for a registered trademark, ®, only appears after the word "Thayers." She argues that it is not apparent from the label what is a trade name and what is a descriptive phrase.   Plaintiff asserts the phrase "Natural Remedies" is a descriptive phrase, as it was disclaimed in Thayer's trademark application, which she attached as an exhibit. ECF No. 16, Ex. A.   The Complaint alleges that by labeling its products as "Natural Remedies," Thayer is representing to reasonable consumers that its products contain only natural ingredients, which they do not.   (ECF No. 1 at 20, ¶66).   Thayer responds that the term "Natural Remedies" remains part of its trade name, even though the term "Natural Remedies" was part of a disclaimer it filed with the United States Patent and Trademark Office.   The Court need not decide whether "Natural Remedies" is part of Thayer's trade name or a descriptive phrase, or the effect of a disclaimer in the trademark application, because, as discussed below, the Court declines to find that a trade name cannot create an express warranty under Missouri law.

Second, the Court does not agree with Thayer's characterization of the law in this area. Thayer does not cite to any Missouri case law holding a product's trade name cannot create an express warranty, and the Court has found none. Further the United States District Court for the Southern District of Illinois found that a Missouri plaintiff stated a claim for breach of warranty

under Missouri law based on the defendant's trade name. York v. Andalou Nats., Inc., No. 16-CV-894-SMY-DGW, 2016 WL 7157555, at *4 (S.D. Ill. Dec. 8, 2016).

The facts in York are almost identical to the present case.   In York, the Missouri plaintiff brought claims against Andalou Naturals, Inc., alleging it had breached an express warranty that its products were natural, when they were not. The Missouri plaintiff's claims were based, at least in part, on the defendant's trade name.   With regard to the breach of express warranty claim, the court in York wrote, "Plaintiff[ ] allege[d] that Defendant made affirmations of fact and the promise to Plaintiff[ ] that the Products were 'natural.' Plaintiff[ ] further allege[d] that the affirmations of fact and promises became part of the basis of the bargain in which Plaintiff[ ] purchased Defendant's products, that Plaintiff[ ] relied on the affirmations when making [her] purchasing decisions, and that Plaintiff[ ] suffered damages as a result." Id.   These are the same allegations Plaintiff has made here.

The defendant in York moved to dismiss the Missouri plaintiff's breach of express warranty claim, arguing its trade name was not something that could be proved false, and the use of its name, Andalou Naturals, did not convey that its products are devoid of synthetic or unnatural ingredients. Applying Missouri case law, the district court found the plaintiff sufficiently stated a claim for breach of express warranty under Missouri law, and the defendant's intentions regarding the branding of its products with the phrase "natural" was not a proper inquiry on a motion to dismiss. Id. (citing Murphy v. Stonewall Kitchen, 503 S.W. 3d 308 (Mo. Ct. App. 2016)).

Thayer is critical of the York decision, arguing the Missouri case on which it was based, Murphy v. Stonewall Kitchen, did not involve a trade name.   But as stated above, Thayer does not cite to any Missouri case law holding a product's name or trade name cannot create an express

warranty.    Thayer argues a trade name only communicates that a product is authentic.    The Court does not agree that authenticity is the only message a trade name can convey.    As other courts have found, it is not unreasonable for consumers to attach meaning to the names of products, particularly when descriptive words are part of the name.    See, e.g., In re 5-hour ENERGY Mktg. & Sales Pracs. Litig., No. MDL 13-2438 PSG PLAX, 2014 WL 5311272, at *2 (C.D. Cal. Sept. 4, 2014) (finding defendant's trademark "5-hour Energy®" could form the basis of an express warranty); Brady v. Bayer Corp., 237 Cal. Rptr. 3d 683, 701 (2018) (holding "One a Day®" trademark acted as an express warranty to consumers).    Contrary to Thayer's assertion that the body of law is "uniform," other courts have found that a trade name can create an express warranty. See In re 5-hour ENERGY Mktg. & Sales Pracs. Litig., 2014 WL 5311272, at *2; Brady v. Bayer Corp., 237 Cal. Rptr. 3d at 701; but see Boyd v. TTI Floorcare N. Am., 230 F. Supp. 3d 1266, 1278 (N.D. Ala. 2011), aff'd sub nom. Green v. Bissell Homecare Inc., 476 F. App'x 238 (11th Cir. 2012), (holding the trade names SteamVac® and PowerSteamer® do not expressly warrant that those products use steam).

Courts have also held the term "natural" in a product's name could form the basis of a claim for breach of express warranty under other states' laws.   See York 2016 WL 7157555, at *4; Goldemberg v. Johnson & Johnson Consumer Cos., Inc., 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014) ("Active Naturals" component   of the Aveeno® Active Naturals® trade name could be a promise sufficient to establish an express warranty); Paulino v. Conopco, Inc., No. 14-CV-5145 JG RML, 2015 WL 4895234, at *3 (E.D.N.Y. Aug. 17, 2015) (holding that "Suave Naturals" could convey to a reasonable consumer that the product lacked synthetic ingredients and formed an express warranty).

In sum, the Court will not hold on a motion to dismiss that the words "THAYERS® Natural Remedies" cannot create an express warranty under Missouri law and declines to follow <u>Lisowski v. Henry Thayer Co.</u>, 501 F. Supp. 3d at 329.   It is not clear from the product's label what is part of Thayer's trade name and what is a descriptive phrase.   As Plaintiff suggests, that the term "Natural Remedies" may be a descriptive phrase regarding the contents of the product.   But even if the term "Natural Remedies" is part of Thayer's trade name, this fact does not defeat Plaintiff's claim.   Other courts have held a breach of warranty claim can be based on a trade name, including one interpreting the word "natural" in a trade name and applying Missouri state law. <u>York</u> 2016 WL 7157555, at *4.   The Court finds Plaintiff has stated a plausible claim for breach of express warranty under Missouri law.

To the extent Thayer is arguing Plaintiff's claims under MMPA and for unjust enrichment also fail because they are based on Thayer's trade name, the same analysis would apply.   Thayer cites to no case law holding a MMPA or unjust enrichment claim cannot be based on a trade name.

### b.    *Online statements*

Thayer next argues the Court must dismiss any claims based on Thayer's online statements because Plaintiff has not alleged that she was personally exposed to or relied on those statements and, therefore, they could not form the basis of any bargain.   The Court agrees with Thayer's reasoning here.

In the Complaint, Plaintiff alleges she purchased Thayers® Natural Remedies Rose Petal Facial Toner from a physical retail store.   She further alleges that prior to purchasing the product, she saw and read the front of the label and relied on the representation and warranty that the product would be a "natural remedy" and "natural," which she understood to mean that the product

contained natural ingredients only and did not contain synthetic chemicals.   There are no allegations that Plaintiff has visited or seen Thayer's website or any social media posts, let alone that she relied on any of the statements it made therein.   Online statements that Plaintiff never saw cannot form the basis of any bargain between Plaintiff and Thayer.   The Court dismisses Plaintiff's claims for breach of warranty to the extent they are based on Thayer's online statements by Thayer. This reasoning also applies to Plaintiff's claims under the MMPA and for unjust enrichment.   To the extent Plaintiff bases these claims on Thayer's online statements, they are dismissed.

### 3.    Missouri Merchandising Practices Act

Thayer also moves to dismiss Plaintiff's claims asserting violations of the MMPA. The MMPA was enacted to protect Missouri consumers from fraudulent business practices. State ex rel. Nixon v. Telco Directory Pub., 863 S.W.2d 596, 601 (Mo. 1993) (en banc); State v. Polley, 2 S.W.3d 887, 892 (Mo. Ct. App. 1999).   The statute is intended to supplement the provisions of a common law action in fraud, and it is not necessary to prove the elements of common fraud for liability to attach under the MMPA.   Clement v. St. Charles Nissan, Inc., 103 S.W.3d 898, 899 (Mo. Ct. App. 2003). Missouri courts have emphasized that the MMPA should be liberally construed to protect consumers.   See, e.g., State ex rel. Webster v. Myers, 779 S.W.2d 286, 290 (Mo. Ct. App. 1989).

To state a claim under the MMPA, a plaintiff must allege that he or she (1) purchased merchandise; (2) for personal, family, or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful by § 407.020 of the MMPA. Hess v. Chase Manhattan Bank, USA, N.A., 220 S.W.3d 758, 773 (Mo. 2007) (en banc). Section 407.020 bars a variety of conduct, including "any deception, fraud, false pretense, false promise,

misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact."  Mo. Rev. Stat. § 407.020.

In the Complaint, Plaintiff asserts four separate counts under the MMPA for the following four alleged types of unfair practices: deception (Count I), misrepresentation (Count II), concealment or omission (Count III), and half-truth (Count IV).   The regulations under the MMPA define "deception" as "any method, act, use, practice, advertisement or solicitation that has the tendency or capacity to mislead, deceive or cheat, or that tends to create a false impression." 15 C.S.R. § 60-9.020.   A misrepresentation is "an assertion that is not in accord with the facts." 15 C.S.R. § 60-9.070. An omission requires scienter and is defined as "any failure by a person to disclose material facts known to him/her, or upon reasonable inquiry would be known to him/her." 15 C.S.R. § 60-9.110(2); See Hope v. Nissan N. Am., Inc., 353 S.W.3d 68, 84 (Mo. Ct. App. 2011) ("a greater showing of bad faith or recklessness is required [for an omission] than   for   the   claims based   on   alleged   affirmative   representations.").   Finally, a half-truth is an omission of "a material fact necessary in order to make statements made, in light of the circumstances under which they are made, not misleading." 15 C.S.R. § 60-9.090.

### a.    *Omissions of material facts*

Thayer asserts that Plaintiff has abandoned any claim under the MMPA for omission or half-truths.   In responding to Thayer's preemption argument in her opposition memorandum Plaintiff states that she is not seeking to add labeling requirements but is only seeking "to stop defendants from voluntarily adding deceptive language to the federally permitted labels.'" ECF No. 16 at 16.   Based on this statement, Thayer asserts Plaintiff has abandoned her claims that Thayer omitted material facts from its labels and argues the Court should dismiss Counts III and IV.

24

In Counts III and IV of the Complaint, Plaintiff alleges Thayer violated the MMPA because its labeling "does not disclose that the Products contain synthetic ingredients" or "which, if any, ingredients are synthetic."   ECF No. 1 at 30-32, ¶¶ 120-21, 136-7.   As discussed above, any claim that Thayer must make disclosures on its label or identify which ingredients are "synthetic" and which are "natural" are preempted by the FDCA.   To the extent Plaintiff has not abandoned these claims, they are dismissed as preempted by federal law.   Missouri Bd. of Examiners for Hearing Instrument Specialists, 447 F.3d at 1035; Medtronic, Inc., 518 U.S. at 485.

In Counts III and IV, Plaintiff also alleges that Thayer "failed to disclose the presence of certain synthetic ingredients, including but not limited to Phenoxyethanol" on its products' labels, which she claims was a material omission under the MMPA. Id. at ¶¶ 123, 140.   In the "Facts Common to All Causes of Action" section of the Complaint, Plaintiff alleges as to Thayers® Natural Remedies Unscented Facial Mist, "while now presently listed on the Ingredients Declaration section on the product, certain synthetic ingredients, including Phenoxyethanol, were deceptively omitted from this section for many years in the Class Period which deceived customers into purchasing Products."   Id. at 20, ¶ 67.

MMPA claims related to the omission of an ingredient from an ingredient statement would not be preempted by the FDCA because exclusion of an ingredient would be prohibited under the FDCA's regulations.   See 21 C.F.R. § 701.3 ("The label on each package of a cosmetic shall bear a declaration of the name of each ingredient in descending order of predominance . . .").   Plaintiff, however, does not allege that she purchased a Thayer product containing an ingredient that was not listed in the ingredients list.   Plaintiff does not allege that she purchased the Unscented Facial Mist, and the label for Thayers® Natural Remedies Rose Petal Facial Toner, the product Plaintiff alleges

25

she did purchase, lists Phenoxyethanol as an ingredient. The Complaint does not allege that any ingredients were omitted from the Rose Petal Facial Toner's label.  To state a claim under the MMPA in Counts III and IV, Plaintiff must allege that she purchased merchandise and suffered an ascertainable loss as a result of the omission of a material fact.  Hess, 220 S.W.3d at 773.  There are no allegations in the Complaint that Plaintiff purchased a Thayer's product containing an ingredient that was missing from the ingredients list on the label.[4]

The Court will dismiss Counts III and IV of the Complaint. To the extent these allege Thayer violated the MMPA because its labeling "does not disclose that the Products contain synthetic ingredients" or "which, if any, ingredients are synthetic," the claims are preempted by federal law. As for the allegation that Thayer failed to disclose the presence of certain synthetic ingredients, such as Phenoxyethanol, on its products' labels, Plaintiff has failed to state a claim because Plaintiff does not allege that that she purchased any Thayer product with a label that did not disclose the ingredients contained therein.

### b.     Deception and misrepresentations

Within regard to Counts I and II, Thayer contends that dismissal is warranted pursuant to Fed. R. Civ. P. 12(b)(6) because no consumer acting reasonably under the circumstances would find that Thayer's use of the word "natural" is deceptive or misleading when viewed in the context

---

[4]The Court agrees with Thayer that in order to state an individual claim under the MMPA, Plaintiff must allege that she purchased the product. This is separate from the issue of whether Plaintiff can bring suit on behalf of a class based on products she did not purchase. See, e.g., Goldman v. Tapestry, Inc., 501 F. Supp. 3d 662 (E.D. Mo. 2020) (finding named plaintiffs had standing to assert claims on behalf of a class as to products they had not purchased). The issue of whether Plaintiff has standing as a named plaintiff to bring claims based on the same representations Thayer made on similar products but which she did not purchase is not before this Court at this time.

of the labeling.   Thayer contends a plain reading of its label demonstrates it does not represent that all of the product's ingredients are "natural," that the product is "100% natural," or that it is all-natural.   Thayer asserts that its product's label is not misleading, deceptive, or false.

Missouri's Supreme Court has not addressed use of the term "natural" on packaging under the MMPA, although the Missouri Court of Appeals, Eastern District has.   In <u>Murphy v. Stonewall Kitchen</u>, 503 S.W.3d 308, the plaintiff alleged the defendant violated the MMPA by advertising on its label that its cupcake mix was "all natural" when it contained sodium acid pyrophosphate.   <u>Id.</u> at 310.   The defendant filed a motion to dismiss, arguing it was not plausible that a consumer would believe the "all natural" representation, because the ingredient label clearly disclosed all the ingredients in the product.   The Missouri Court of Appeals rejected the "ingredients list" defense as a matter of law. The court wrote that the Food and Drug Administration "does not require an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misrepresentations and provide a shield from liability for that deception."   Instead, "[a] reasonable consumer would expect that the ingredient list comports with the representations on the packaging."   503 S.W.3d at 312–13.   The court held, "[w]hile the presence of an ingredient list may be relevant to Stonewall Kitchen's defense at trial, the "ingredient list" defense cannot, as a matter of law, defeat an MMPA claim."   <u>Id.</u>   The Court of Appeals found the plaintiff had stated a claim under the MMPA because use of the term "all natural" could be understood by an ordinary consumer to mean the cupcake mix did not contain artificial or synthetic ingredients, which it allegedly did. <u>Id.</u>

The present case is distinguishable from <u>Murphy</u> because the terms at issue are not the same. Here, Plaintiff is challenging the use of the terms "natural" and "natural remedies," as opposed to

27

"all natural" or "nothing artificial."   That said, the Court finds the case to be instructive.   Applying Murphy, the issue before this Court is whether a fact finder could find Thayer's use of the term "natural" could be understood by an ordinary consumer to mean the product does not contain artificial or synthetic ingredients, which it allegedly did.   503 S.W.3d at 312–13.   The Court finds Plaintiff's alleged interpretation of the terms "natural" and "natural remedies" on Thayer's labels is not outside the realm of reason.   As other courts have found, use of the term "natural," without qualification, could mean the product contains natural ingredients, as well as other ingredients; or it could mean the product is natural, in other words, it contains only natural ingredients. See Munsell v. Colgate-Palmolive Co., 463 F. Supp. 3d 43, 53 (D. Mass. 2020) (finding use of the word "natural" on the front of Tom's of Maine personal care products could be interpreted to mean the products did not contain synthetic, artificial, or chemically processed ingredients); Holve v. McCormick & Co., Inc., 334 F. Supp. 3d 535, 558 (W.D.N.Y. 2018) (finding plaintiff stated a claim because the term "natural" could be interpreted to mean the products did not contain synthetic ingredients); York, 2016 WL 7157555, at *4 (same); Segedie v. Hain Celestial Grp., Inc., No. 14-CV-5029 NSR, 2015 WL 2168374, at *11 (S.D.N.Y. May 7, 2015) (finding "it is not unreasonable as a matter of law to expect that a product labeled 'natural' or 'all natural' contains only natural ingredients"). As Murphy and other courts have stated, whether a reasonable consumer would be deceived by a product label is generally a question of fact.   Murphy, 503 S.W.3d at 312; Thornton v. Pinnacle Foods Grp. LLC, No. 4:16-CV-00158 JAR, 2016 WL 4073713, at *3 (E.D. Mo. Aug. 1, 2016); York, 2016 WL 7157555, at *4.   In the present case, there remains an issue of fact as to whether a reasonable consumer could find that the term "natural" as used by Thayer could be understood to mean the product does not contain artificial or synthetic ingredients.

The Court declines to hold as a matter of law that Thayer's use of the term "natural" or "natural remedies" on its products labels could not be interpreted by a reasonable consumer to mean the product does not contain artificial or synthetic ingredients. York, 2016 WL 7157555, at *2. The Court finds Plaintiff has stated a claim under the MMPA case because "whether a reasonable consumer would be deceived by a product label or a reasonable consumer's understanding of the term 'natural' are questions of fact that cannot be resolved pursuant to a motion to dismiss." Id. (citing Murphy, 503 S.W.3d 308).  Plaintiff adequately alleges the unfair practices of deception and misrepresentations under the MMPA.

### c.   *Ascertainable loss*

Thayer next argues Plaintiff did not suffer an ascertainable loss based on her purchase of Thayers® Natural Remedies Rose Petal Facial Toner because she used a 40% off store coupon. Thayer argues, "Plaintiff 'has not identified any less-expensive, comparable alternative products that [she] would have purchased to allow a determination of the measure of the loss.'"  ECF No. 9 at 17 (quoting Lisowski, 2020 WL 6743258, at *13).

Missouri courts apply the "benefit of the bargain rule" to determine whether a plaintiff has suffered an ascertainable loss under the MMPA. Thompson v. Allergan USA, Inc., 993 F.Supp.2d 1007, 1012 (E.D. Mo. 2014) (citations omitted).  The benefit of the bargain doctrine "compares the actual value of the item to the value of the item if it had been as represented at the time of the transaction." Murphy, 503 S.W.3d at 313 (citing Schoenlein v. Routt Homes, Inc., 260 S.W.3d 852, 854 (Mo. Ct. App. 2008).  Here, like the plaintiff in Murphy, plaintiff has alleged the price she paid for the product was worth less than the product as represented.  The Complaint alleges the price Plaintiff paid for the product; that there is increased demand by consumers for natural products

that are devoid of synthetic ingredients; and that the product was worth less than Plaintiff paid because it was not "natural" as Thayer represented.   The Complaint adequately alleges that the loss was the result of Thayer's deceptive labeling and is sufficient to state a claim. Id.

At this juncture, the Court finds it immaterial that Plaintiff used a store coupon when purchasing the Rose Petal Facial Toner. This fact may raise factual issues as to the amount of damages Plaintiff sustained, but it does not negate the fact that Plaintiff has alleged an ascertainable loss under the MMPA.

###### d.   *Standing for MMPA injunctive relief*

Thayer also argues Plaintiff lacks Article III standing to seek injunctive relief for her MMPA claims, because she admits she will not purchase Thayer's products now that she allegedly understands they contain ingredients that are not "natural."

Article III of the United States Constitution grants federal courts jurisdiction to decide "cases and controversies."   To establish the "irreducible constitutional minimum of standing," a plaintiff must show she has "(1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged action of [the defendant], and (3) is likely to be redressed by a favorable judicial decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).   To seek injunctive relief, a plaintiff must show he or she "faces a threat of ongoing or future harm." Park v. Forest Serv. of U.S., 205 F.3d 1034, 1037 (8th Cir. 2000). "[I]t is the plaintiff's burden to establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue and that the threatened injury is certainly impending." Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 170 (2000) (citing Whitmore v. Arkansas, 495 U.S. 149, 158 (1990)).

Here, the Complaint alleges a threat of ongoing or future harm that is traceable to Thayer's conduct.   The Complaint alleges the labels on Thayer's products are misleading and deceptive because they represent that Thayer's products are "natural" when they are not.   Plaintiff alleges that she purchased a Thayer product believing it was natural, but would not have purchases it had she known the product contained synthetic ingredients.   The Complaint alleges Thayer continues to sell products with misleading and deceptive labels indicating its products are natural. Plaintiff also asserts she would benefit in a tangible way from injunctive relief because she alleges in the Complaint that if Thayer changes its practices, she is likely to buy the products in the future.

Although Plaintiff has "discovered" Thayer's alleged deception and misrepresentation, this does not preclude her from seeking injunctive relief, because Plaintiff alleges Thayer's MMPA violations are ongoing. See Hawkins v. Nestle U.S.A. Inc., 309 F. Supp. 3d 696 (E.D. Mo. 2018) ("[T]he fact that Plaintiff discovered Defendant's allegedly unlawful practice does not make the packaging less misleading, nor mean that the practice is not ongoing. Plaintiff need plead nothing more to survive a motion to dismiss a request for injunctive relief for lack of Article III standing." (citing Whitmore, 495 U.S. at 158–59; United States v. SCRAP, 412 U.S. 669 (1973)).   Plaintiff alleges she would purchase Thayer's products if Thayer changed its alleged unlawful practices. These allegations "are enough to confer standing to pursue injunctive relief."   Browning v. Anheuser-Busch, LLC, No. 20-CV-00889-SRB, 2021 WL 1940645, at *7 (W.D. Mo. May 13, 2021).   Browning, 2021 WL 1940645, at *7 (finding plaintiffs had Article III standing for injunctive relief where they alleged they would purchase the defendant's products if they could be assured defendant was not making misrepresentations on its labels).   See also Chester v. TJX Cos., Inc., No. 515CV01437ODWDTB, 2016 WL 4414768, at *8 (C.D. Cal. Aug. 18, 2016) ("It is

31

inconceivable to think prospective relief in the false advertising context is bound by the rules of 'fool me once, shame on you; fool me , shame on me.' The Court ... refuses to find that, once a plaintiff has alleged that she was deceived, she likely will not voluntarily be deceived again—and thus no court can enjoin deceptive practices without ignoring Article III's standing requirements.") The Complaint contains sufficient allegations to confer standing for injunctive relief.   The Court will not dismiss Plaintiff's request for injunctive relief at this time.

4.      **Unjust Enrichment**

Finally, Thayer moves to dismiss Plaintiff's claim of unjust enrichment. Thayer argues this claim "fails for the same reasons as her other claims – she has failed to plead that the product she purchased did not conform to the representations about that product."   ECF No. 9 at 14.   Thayer also argues Plaintiff cannot maintain an unjust enrichment claim because her claim arises out of a contract, which it characterizes as the purchase of the Rose Petal Facial Toner.

Unjust enrichment has three elements under Missouri law: "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances."  Binkley v. Am. Equity Mortg., Inc., 447 S.W.3d 194, 199 (Mo. 2014) (en banc) (quotation omitted).   "An unjust enrichment has occurred where a benefit was conferred upon a person in circumstances in which retention of the benefit, without paying its reasonable value, would be unjust."  S & J, Inc. v. McLoud & Co., 108 S.W.3d 765, 768 (Mo. Ct. App. 2003).

Unjust enrichment is "an equitable remedy based on the concept of a quasi-contract." Affordable Communities of Missouri v. Fed. Nat. Mortg. Ass'n, 714 F.3d 1069, 1077 (8th Cir. 2013).   A judgment in favor of a party on both contract and unjust enrichment claims would

constitute a double recovery.   See MECO Sys., Inc. v. Dancing Bear Ent., Inc., 42 S.W.3d 794, 810–11 (Mo. Ct. App. 2001) (where court entered judgment for plaintiff on contract claims, it properly denied plaintiff's unjust enrichment claims to avoid a double recovery, where plaintiff did not elect its remedy and submitted both claims).   In general, an unjust enrichment claim should be dismissed if a "plaintiff has entered into an express contract for the very subject matter for which he seeks recovery."   Affordable Communities of Missouri, 714 F.3d at 1077.   In such a case, a plaintiff's rights are limited to the express terms of the contract.   Id.

As explained above, Plaintiff adequately alleges that the product she purchased did not conform to the representations Thayer's made about its product.   Contrary to Thayer's assertion, Plaintiff does plead the required elements for a claim of unjust enrichment under Missouri law. Binkley, 447 S.W.3d 199 (outlining elements of unjust enrichment claim); Hawkins, 309 F. Supp. 3d at 707 (finding consumer stated unjust enrichment claim based on purchase of product with alleged misrepresentation); Thornton, 2016 WL 4073713, at *4 (same).

As for Thayer's argument that the claim is precluded because there was a contract for the purchase of the product, the Court finds it is disputable whether there was an "express contract" for the purchase of the product.   Affordable Communities of Missouri, 714 F.3d at 1077.   Thayer cites no cases holding that a consumer's purchase of a retail product is an "express contract," which precludes a claim for unjust enrichment.   Moreover, it is generally permissible to pursue alternative theories at the pleading stage, and plaintiff has pleaded an alternative claim for unjust enrichment. Thus, Thayer's motion to dismiss Count VI of Plaintiff's complaint is denied.

### IV.    Conclusion

In sum, the Court declines to transfer or stay this action on the basis of the first-filed doctrine, as the interests of justice and judicial economy are best served by maintaining the case in this Court.   As for Thayer's motion to dismiss, to the extent Plaintiff's Complaint alleges that the font size of the ingredients list is too small on Thayer's labels, that Thayer must include disclaimers on its products' labels, or that the labels on its products must identify which ingredients are "synthetic" and which are "natural," these claims are preempted by the FDCA.   The Court dismisses all of Plaintiff's claims to the extent they are based on Thayer's online statements. The Court also finds MMPA Counts III (Concealment or Omission of any Material Facts) and Count IV (Half Truths) should be dismissed, as these claims are preempted by the FDCA, and to the extent they are not, Plaintiff fails to allege the required elements to state a claim under the MMPA for concealment or omission of any material facts or half-truths.   Finally, the Court dismisses any claim Plaintiff is asserting as an individual based on products that she did not herself purchase. In all other respects, Thayer's Motion to Dismiss is denied.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Cynthia Early's Motion for Leave to File a Surreply in Response to Defendant's Motion to Dismiss, which the Court construes as a motion for leave to file a surresponse, is **DENIED.** [ECF No. 18]

**IT IS FURTHER ORDERED** that Plaintiff Cynthia Early's Motion for Leave to File an Amended Memorandum in Opposition to Defendant's Request to Transfer is **GRANTED.** Plaintiff shall promptly file her Amended Memorandum without an exhibit designation.   [ECF No. 25]

**IT IS FURTHER ORDERED** that Defendant Henry Thayer Company, Inc.'s Motion to Transfer to the Western District of Pennsylvania, or in the alternative, to stay these proceedings, is **DENIED.**   [ECF No. 19]

**IT IS FURTHER ORDERED** that Defendant Henry Thayer Company, Inc.'s Motion to Dismiss is **GRANTED** in part and **DENIED** in part.   [ECF No. 8].   The motion is **GRANTED** as to any claim based on allegations that (1) the font size of the ingredients list on a Thayer's product label is too small, (2) Thayer must include disclaimers on its product labels, or (3) the labels on Thayer's products must identify which ingredients are "synthetic" and which are "natural," as these claims are preempted by the Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301, et seq.   The Court dismisses all of Plaintiff's claims to the extent they are based on Thayer's online statements. The Court dismisses claims under the Missouri Merchandising Practices Act for Concealment or Omission of any Material Facts (Count III) and for Half Truths (Count IV).   The Court dismisses any claim Plaintiff Cynthia Early is asserting as an individual that is based on products that she did not herself purchase.   In all other respects, the Motion to Dismiss is **DENIED.**

_Ronnie L. White_

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this   22nd   day of July, 2021.